UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD J. WILSON, | ) | Case No. EDCV 05-0346-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On May 10, 2005, Richard J. Wilson ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for supplemental security income. On August 11, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on November 16, 2005, defendant filed an Answer to Complaint. On January 26, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On May 31, 2001, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 68-70). In his application, plaintiff claimed that, beginning on February 1, 1985, psychotic disorders prevented him from working. (AR at 78). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 51-57, 59-63). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 66).

On February 4, 2003, the ALJ conducted a hearing in Orange, California. (AR at 25-50). Plaintiff appeared at the hearing with counsel and testified. (AR at 30-49). On April 23, 2003, the ALJ issued her decision denying benefits. (AR at 13-19). In her decision, the ALJ concluded that plaintiff suffered from hypertension, a history of hepatitis, and trigeminal neuralgia, impairments that were severe in combination. (AR at 14). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ also found that, based upon his residual functional capacity, plaintiff retained the capacity to perform a full range of medium work. (AR at 18). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On May 29, 2003, plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR at 7-9). On September 8, 2003, the Appeals Council affirmed the ALJ's decision. (AR at 4-6). Thereafter, plaintiff appealed to the District Court for relief. On March 29, 2004, the parties entered into Stipulation for Order of

1  Remand, remanding the case to the ALJ to further evaluate plaintiff's
2  mental impairments, provide a rationale explaining the weight given
3  to the opinion evidence, and consider the lay evidence.  (AR at 414-
4  15).  On June 14, 2004, the Appeals Council vacated the ALJ's decision
5  and remanded the case to the ALJ.  (AR at 412-13).
6     On November 9, 2004, the ALJ conducted a hearing in Orange,
7  California.  (AR at 451-64).  Plaintiff appeared at the hearing with
8  counsel and testified.  (AR at 456-61).  Alan Boroskin, a vocational
9  expert, also testified.  (AR at 461-62).  On February 17, 2005, the
10 ALJ issued her decision again denying benefits.  (AR at 364-73).  In
11 her decision, the ALJ concluded that plaintiff suffered from
12 trigeminal neuralgia, hypertension, hepatitis B and C, lower extremity
13 edema, and, obesity, impairments that were severe in combination. (AR
14 at 367).  According to the ALJ, however, these impairments did not
15 meet or equal any of the criteria contained in the Commissioner's
16 Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.
17 (AR at 372).  The ALJ also found that plaintiff did not suffer from
18 a severe visual or mental impairment. (AR at 367, 368).  The ALJ again
19 determined that, based upon his residual functional capacity,
20 plaintiff retained the capacity to perform a full range of medium
21 work.  (AR at 372).  Ultimately, the ALJ found that plaintiff was not
22 disabled pursuant to the Social Security Act.  (Id.).
23    Plaintiff did not request a review of the ALJ's decision and the
24 decision became the final decision of the Commissioner. (Joint Stip.
25 at 3).
26 ///
27 ///
28 ///

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1. The ALJ failed to properly find that plaintiff's mental impairments were severe.

2. The ALJ failed to pose a complete hypothetical to the vocational expert regarding plaintiff's nonexertional limitations.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.    Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ erred in finding that plaintiff's mental impairment did not constitute a severe impairment. According

to plaintiff, the ALJ failed to consider objective medical evidence in the record, namely the opinions of physicians at the Utah State Prison Mental Health Services, as well as opinions of the consultative examiners and State Agency physicians.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306). The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

Here, the ALJ found that plaintiff's psychotic disorder did not constitute a severe impairment. Specifically, the ALJ found that plaintiff's mental impairments did not restrict his daily activities, did not present difficulties in maintaining social functioning, and did not limit his concentration, persistence, and pace. (AR at 367). Furthermore, the ALJ concluded that the record did not support a finding that plaintiff ever experienced an episode of deterioration or decompensation. (AR at 368). For that reason, the ALJ rejected

plaintiff's mental impairment or combination of impairments as not severe.

Plaintiff sought mental health treatment while he was incarcerated at the Utah State Prison. (AR at 113-186). On July 26, 2000, Jennifer Anderson, Ph.D., examined plaintiff and made the following diagnosis: rule out psychotic disorder, rule out substance-induced psychotic disorder, alcohol dependence, and opiod dependence. (AR at 150-51). On September 26, 2000, John Helfer, M.D., examined plaintiff and found his credibility to be "extremely poor." (AR at 168). Dr. Helfer further opined that plaintiff acted rationally, did not appear psychotic, and was "extremely manipulative." (Id.). In their last assessment, however, on February 28, 2001, Dr. Helfer and Jennifer Spackman, Psyc.D., diagnosed plaintiff with psychotic disorder, NOS;[1] opiod-induced psychotic disorder, with hallucinations; opiod dependence, in institutional remission; and alcohol dependence, in institutional dependence. (AR at 114).

On September 10, 2001, physicians at the Orange County Health Care Agency Behavioral Health Services diagnosed plaintiff with mood disorder, not otherwise specified; opiate abuse; and antisocial disorder. (AR at 263). On December 28, 2001, physicians diagnosed plaintiff with mood disorder, not otherwise specified and assessed him

---

[1] Psychotic disorder NOS includes "psychotic symptomatology (i.e., delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior) about which there is inadequate information to make a specific diagnosis or about which there is contradictory information, or disorders with psychotic symptoms that do not meet the criteria for any specific Psychotic Disorder." Diagnostic and Statistical Manual of Mental Disorders 343 (4th ed. rev. 2000).

6

with a Global Assessment of Functioning ("GAF") score of 60.[2] (AR at 267).

On September 21, 2001, Nader Oskooilar, M.D., performed a Complete Psychiatric Evaluation of plaintiff and diagnosed him with psychosis, NOS; alcohol dependency in sustained partial remission; polysubstance abuse/dependency in sustained full remission, per patient; tobacco dependency; and antisocial personality disorder. (AR at 219). Dr. Oskooilar found that while plaintiff's prognosis was fair with adequate psychiatric treatment and sobriety from drugs and alcohol, he was not socially functional and suffered from chronic memory and concentration problems. (AR at 219). Dr. Oskooilar further assessed plaintiff with a GAF score of 65.[3] (Id.). Nonetheless, the physician opined that plaintiff is able to do repetitive tasks with general supervision, but needed to work in an isolated environment. (Id.).

On October 22, 2002, Charlene K. Krieg, Ph.D., performed a Psychological Evaluation of plaintiff and diagnosed him with alcohol, heroin, and cocaine dependence, in remission, per history; and anti-

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A person with a GAF score of 51 to 60 exhibits "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[3] A person with a GAF score of 61 to 70 exhibits, "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

7

social personality disorder, per records. (AR at 274). Dr. Krieg found no evidence of disorder on mental status and found that if plaintiff's substance abuse remained in remission, no impairment existed that would interfere with his ability to complete a normal workday or workweek. (AR at 274-75). Dr. Krieg found qualitative discrepancies in psychological test results whereby plaintiff performed better on more difficult items. (AR at 273).

On September 30, 2004, Harrell Reznick, Ph.D., performed a Psychological Evaluation of plaintiff and diagnosed him with polysubstance abuse, in remission, by history and antisocial personality disorder. (AR at 439). Notably, Dr. Reznick opined that plaintiff "appeared to exert a non-optimal effort throughout the evaluation." (AR at 437). Overall, Dr. Reznick opined that plaintiff would be able to perform simple and repetitive tasks with minimal supervision. (AR at 439).

On October 5, 2001, Paul Balson, M.D., completed a Mental Residual Functional Capacity Assessment of plaintiff. (AR at 238-40). Dr. Balson found plaintiff to be moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors. (AR at 238-39). In the remaining majority of categories, Dr. Balson found no significant limitation. (AR at 238-

39). Overall, Dr. Balson found plaintiff to be suffering from antisocial and narcissistic personality disorder. (AR at 249).

Defendant noted that the opinions of the consultative examiners supported the ALJ's finding that plaintiff's mental impairment was not severe. First, the ALJ noted that Dr. Reznick found plaintiff was oriented in all dimensions and that the physician opined that plaintiff gave less than the optimal efforts on the tests administered. (AR at 366). Second, the ALJ noted in his first decision, which was incorporated by reference in the remanded decision, that Dr. Krieg found no evidence of any disorder on mental status. (AR at 16, 366). Finally, the ALJ explicitly rejected the opinions of Dr. Oskooilar, who found plaintiff to suffer from a psychotic disorder, and the social worker at the Orange County Health Care Agency Behavioral Health Services, who assessed plaintiff with a GAF score of 60. (AR at 370-71). The ALJ further noted that several physicians noted that plaintiff appeared to be manipulative or deceptive during the examination. (AR at 369).

Notwithstanding the above, however, the ALJ did not address the opinions of plaintiff's treating physicians, Drs. Helfer and Spackman, who diagnosed plaintiff with psychotic disorder, NOS; opiod-induced psychotic disorder, with hallucinations; opiod dependence, in institutional remission; and alcohol dependence, in institutional dependence (AR at 114). The ALJ also did not address the opinion of the physician at the Orange County Health Care Agency who opined that plaintiff suffered from mood disorder (AR at 263).

The medical opinion of plaintiff's treating physician is entitled to special weight. Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998). "Even if the treating doctor's opinion is contradicted by

9

another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Reddick, 157 F.3d at 725. Here, plaintiff's treating physicians diagnosed him with psychotic disorder (AR at 114) and mood disorder (AR at 263). The ALJ failed to even acknowledge their diagnoses.

The ALJ noted that plaintiff's mental impairments did not limit his ability to carry out activities of daily living, maintain social functioning, or sustain his concentration, persistence, and pace. (AR at 20). But the foregoing does not address the issue of whether, notwithstanding the ALJ's finding, plaintiff's mental impairments significantly limited his ability to do basic work activities, including walking, standing, siting, lifting, pushing, pulling, reaching, carrying or handling. 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28; see Smolen, 80 F.3d at 1290. Smolen, 80 F.3d at 1290. As stated above, the step-two inquiry is a de minimis screening device to dispose of groundless claims. Id.; see Bowen, 482 U.S. at 153-54. Here, absent any reasons to reject the treating physicians' opinions, the de minimis standard has been satisfied.

**B.     Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional

10

proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Id.; see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must determine whether the evidence establishes a severe mental impairment in light of the opinions of Drs. Helfer and Spackman, and the physician at the Orange County Health Care Agency who examined plaintiff on September 10, 2001. If the ALJ determines that a severe impairment exists, the ALJ must then determine whether the severe impairment meets or equals a listed impairment. At the step two inquiry, the ALJ must consider the combined effect of all plaintiff's impairments on plaintiff's ability to function, without regard to whether each alone was sufficiently severe. See Smolen, 80 F.3d at 1290. The ALJ must then determine whether the impairment prevents plaintiff from performing work in the national economy in light of his age, education, and work experience.[4]

---

[4] In the Joint Stipulation, plaintiff also claims that the ALJ erred in failing to pose a complete hypothetical to the vocational expert regarding plaintiff's nonexertional limitations. As explained above, however, the ALJ's failure to examine all the medical evidence in determining whether plaintiff
(continued...)

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: May 12, 2006

                                                                                       /s/
                                                          JENNIFER T. LUM
                                                          UNITED STATES MAGISTRATE JUDGE

---

[4](...continued)
suffers from a severe mental impairment constitute sufficient reason to remand this case.  Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.